IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN WHITE and MARY WHITE,    :    CIVIL ACTION NO. 4:06-CV-2453
husband and wife,    :
    :
    Plaintiffs    :
    :
    v.    :    Magistrate Judge Blewitt
    :
WEST AMERICAN INSURANCE CO.,    :
    :
    Defendant    :

**MEMORANDUM and ORDER**

**I. Background.**

The instant action was commenced in federal court on December 22, 2006, when the

Defendant filed a Notice of Removal from state court pursuant to 28 U.S.C. § 1446. (Doc. 1).  The

Defendant's removal was based on diversity, and the Defendant indicated that the amount in

question was over $75,000, satisfying this Court's jurisdictional requirements.  *See* 28 U.S.C.

§ 1332(a).  The Defendant then filed an Answer to the Complaint on December 26, 2006. (Doc.

5).  The parties consented to proceed before the undersigned for a determination of all matters

pursuant to 28 U.S.C. § 636(c).  (Doc. 9).

Basically, the Plaintiffs allege that they purchased a homeowners insurance policy from the

Defendant which covered their double-wide trailer dwelling in Hawley, Pennsylvania, and that the

Defendant wrongfully denied coverage with respect to their claims for damages to their trailer and

personal property which occurred on June 28, 2006.[1]   Plaintiffs assert two counts in their

---

[1]Plaintiffs attached a copy of their policy as Ex. A to their Complaint. (Doc. 2).  The
July 7, 2006 claim denial letter from Defendant is attached to Plaintiffs' Complaint as Ex. B. (*Id.*).

Complaint, namely, breach of the insurance contract (Count I) and bad faith (Count II).  (Doc. 2).

After the close of discovery, on March 7, 2008, Defendant filed a Motion for Summary Judgment (Doc. 17) and a Brief in support thereof (Doc. 18).  Although the Defendant did not strictly follow Local Rule 56.1, M.D. Pa., by filing a separate Statement of Material Facts (SMF), the Court notes that the Defendant did include its lengthy, 28-page, 98-paragraph SMF in the body of its Motion for Summary Judgment, and the statements are in numbered paragraphs which are, for the most part, supported by references to the record.  (Doc. 17).  To the extent that Defendant's SMF contains conclusions of law, the Court will not accept these paragraphs.  The Defendant also filed a Motion *in Limine* seeking to preclude the Plaintiffs' Expert witness, and a Brief in support on March 8, 2008. (Docs 19 and 20).

On March 18, 2008, the Plaintiffs filed two identical, two-paragraph Answers to the Defendant's Motion for Summary Judgment, which generally denied the statements contained in Defendant's Motion for Summary Judgment. (Docs. 21 and 23).  The Plaintiffs did not file a paragraph-by-paragraph response to the Defendant's numbered SMF contained within its Summary Judgment Motion as Local Rule 56.1 mandates.  Plaintiffs also filed two identical Answers to Defendant's Motion *in Limine* on March 18, 2008. (Docs. 22 and 24).

The Plaintiffs filed a Brief in Opposition to the Defendant's Motion for Summary Judgment on March 20, 2008. (Doc. 27).  Plaintiffs also filed a Brief in Opposition to Defendant's Motion *in Limine* on March 25, 2008. (Doc. 30).  The Defendant then filed a Reply Brief in support of its Summary Judgment Motion on April 2, 2008. (Doc. 33).  The Defendant also filed a Reply Brief in support of its Motion *in Limine* on April 8, 2008. (Doc. 34).

Subsequently, after obtaining leave of the Court (*See* Docs. 35 and 36), Defendant filed a Supplemental Brief in Support of its Motion for Summary Judgment on May 16, 2008. (Doc. 37). The Plaintiffs filed an Opposition Brief to Defendant's Supplemental Brief on May 20, 2008. (Doc. 38). The Defendant then filed a Reply Brief in Support of its Supplemental Brief on May 30, 2008. (Doc. 39).

Upon request of the Defendant, the Court conducted oral argument with respect to its Summary Judgment Motion on November 10, 2008. (Doc. 40). The parties primarily argued about Defendant's dispositive Motion and reserved argument concerning Defendant's Motion *In Limine* since the latter Motion would be moot if the Summary Judgment Motion was granted. (Doc. 44).

## II.  Summary Judgment Standard.

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56.  The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c).  An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  A fact is "material" if proof of its existence or non-existence could affect the outcome of the action pursuant to the governing law. *Anderson*, 477 U.S. at 248.  "Facts that could alter the outcome are material facts." *Charlton v. Paramus Bd. of Educ.*, 25 F. 3d 194, 197 (3d Cir.), *cert. denied*, 513 U.S. 1022 (1994).

3

The burden of proving that there is no genuine issue of material fact is initially upon the movant. *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983).  Upon such a showing, the burden shifts to the nonmoving party.  *Id.* The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party.  *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988).  In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor.  *Id.*, *quoting Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038 (1977).

Under Rule 56, summary judgment must be entered where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Moreover, the Third Circuit has recently indicated that "although the party opposing summary judgment is entitled to 'the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleadings, legal memorandum or oral argument.'" *Goode v. Nash*, 2007 WL 2068365 (3d Cir. 2007)(Non-Precedential)(citation omitted).

4

### III. Material Facts.

While the Defendant did not submit a separate filing containing its SMF, as mentioned, the Court finds as sufficient the Defendant's SMF that was submitted as part of its Motion for Summary Judgment. (Doc. 17). The Defendant's fact paragraphs in its Motion were numbered and properly supported by citation to evidence. Therefore, the Court shall adopt as its own all of Defendant's facts contained in its SMF that are supported by citation to evidence and that are not disputed by the Plaintiffs. The Plaintiffs did not submit a Counter-Statement of Material Facts, as required, to respond to the facts stated in the Defendant's SMF. Therefore, the Court deems the facts in the Defendant's SMF supported by the record as undisputed facts. The Defendant has offered evidentiary support for all of its factual paragraphs contained in its SMF, while the conclusory paragraphs do not cite to the record. (Doc. 17). The Court will accept the facts (not the conclusions) contained in Defendant's SMF that are supported by evidence and that are not controverted by Plaintiffs, and it will adopt them as its own herein.  *See U.S. ex rel. Paranich v. Sorgnard*, 396 F. 3d 326, 330, n. 5 (3d Cir. 2005) (under M.D. Pa. L.R. 56.1, the Third Circuit noted that the District Court adopted all the facts of one party that were not clearly disputed by the other party with sufficient citation to the record).[2]

Also, as stated, since Plaintiffs did not respond to the facts contained in the Defendant's SMF, the Court shall not repeat these evidentiary supported factual paragraphs herein and will incorporate them by reference. In the case of *Barthalow v. David H. Martin Excavating, Inc.*, 2007 WL 2207897, * 1, n. 5, (M.D. Pa. 2007), this Court noted:

---

[2]*See also Paranich* District Court case at 286 F. Supp. 2d at 447, n. 3.

> The Middle District of Pennsylvania's Local Rule of Court 56.1 provides that a summary judgment motion must include a separate concise statement of material facts. M.D. Pa. Local R. 56.1. The rule also requires that an opposition to a summary judgment motion must similarly include a statement that "responds to the numbered paragraphs set forth in [the moving party's concise statement of material facts], as to which it is contended that there exists a genuine issue to be tried." *Id.* Moreover, "[a]ll material facts set forth in [the moving party's statement] will be deemed to be admitted unless controverted by the [opposing party's statement]. " *Id.*

*See also Dusenbery v. U.S.*, 2006 WL 218220, * 1 (M.D.Pa. 2006) ("it appearing that defendants' statement of material facts was properly deemed admitted by Plaintiffs *see* L.R. 56.1 providing that the moving party's statement of material facts will be deemed admitted unless the non-moving party specifically contradicts the statement").

## IV. Discussion.

The Court must ascertain the scope and extent of the insurance policy Plaintiffs purchased from Defendant in order to determine if there was a breach of contract. Only after first determining if there was a breach of contract can the Court properly address the issue of bad faith. If there was no breach of contract, the Plaintiffs cannot, by law, pursue a bad faith claim. If there was a breach of contract, the Plaintiffs would have to make a showing by clear and convincing evidence that the Defendant's denial of coverage was made in bad faith, in order to proceed to trial on this claim.

### A. Policy/Exclusion Clause Interpretation

The determination of the scope and extent of the Plaintiffs' policy is the gravamen of this case. In making an insurance policy coverage determination, the Court must initially decide the scope of the insurance coverage and then review the allegations raised in the pleading to see if they fall within the scope of the policy, if proven. *See Britamco Underwriters, Inc. v. Grzeskiewicz*, 433

6

Pa. Super. 55, 59, 639 A. 2d 1208 (1994) (citation omitted).  Further, under Pennsylvania law, the

interpretation of an insurance contract is a question of law for the Court to decide.  *See Reliance*

*Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997) (citation omitted).[3]

> [I]n Pennsylvania a court construes ambiguities in an insurance policy
> strictly against the insurer.  *See, e.g., Selko v. Home Ins. Co.*, 139 F.3d
> 145, 152 n. 3 (3d Cir. 1998) (*citing Standard Venetian Blind Co. v.
> Am. Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (Pa. 1983)).
> Nevertheless, in Pennsylvania, and no doubt elsewhere, "[c]lear
> policy language . . .  is to be given effect, and courts should not
> torture the language to create ambiguities but should read the
> policy provisions to avoid it."  *Selko*, 139 F.3d at 152 n. 3 (internal
> citations and quotation marks omitted).  In construing policy
> language, courts should consider any special usage "[w]here terms
> are used in a contract which are known and understood by a particular
> class of persons in a certain special or peculiar sense [.]" *Sunbeam
> Corp. v. Liberty Mut. Ins. Co.*, 566 Pa. 494, 781 A.2d 1189, 1193
> (Pa. 2001)."

*USX Corp. v. Liberty Mut. Ins. Co.*, 444, F.3d 192-198, 2006 WL 903192 * 4 (3d Cir. 2006).

The Court agrees with Defendant and determines that there are no ambiguities in the policy

in this case. (Doc. 17-2, Ex. 1).  There are several clauses in the homeowners insurance policy that

are under contention in this case, but when read under the guidance of Pennsylvania law, they

form a coherent document which clearly states what damages are covered and excluded under the

policy.  Initially at issue are two sections of the policy, namely, (1) a Water Damages Exclusion, and

(2) a Pollutant Exclusion, with an accompanying Exception.

---

[3]Pennsylvania substantive law is utilized in this diversity case since the Court sits in
Pennsylvania.  *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Gasperini v. Center for
Humanities, Inc.*, 518 U.S. 415, 427 (1996).  Thus, the Court applies Pennsylvania law with
respect to the insurance coverage issue as the events in question occurred in Pennsylvania.

The Water Damage Exclusion is found in Section I- Exclusions of the policy, which states in relevant part:

**Section I- Exclusions**
**A.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area. . .

**3. Water Damage**
Water Damage means:
**a.** Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

**b.** Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump, or related equipment; or

**c.** Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool, or other structure;
caused by or resulting from human or animal forces or an act of nature.

(Doc. 17-2, Ex. 1, pp. 15-16).

The Pollutant Exclusion is found in the Secure Home Endorsement- Pennsylvania section of the policy, which states in relevant part:

**Section I- Perils Insured Against**

We insure against risk of direct physical loss to property described in Coverages A, B and C.
We do not insure, however, for loss:

**A.** Under Coverages A, B and C:
      **1.** Excluded under Section I- Exclusions;
      **2.** Caused by:

**Exception To 2.e.**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage A, B or C resulting from accidental discharge or overflow of water or steam within a:

**(i)** Storm drain, or water, steam, or sewer pipe, off the "residence premises"; or

**(ii)** Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises". . . .

(Doc. 17-2, Ex. 1, pp. 29-30).

In the subject policy, the 2.e. Exception clearly defers to the Section 1- Exclusions by the words, "We do not insure, however, for loss: 1. Excluded under Section 1- Exclusions". (Doc. 17-2, Ex. 1, p. 29).   Further, the words preceding the body of the 2.e. Exception indicate that the Exception is deferential to other exclusions, *i.e.,* it states, "unless otherwise excluded," and the Exception only applies if the other exclusions do not.  *(Id*. at 30).  The language of the policy is clear that the 2.e. Exception would apply, if and only if, the Exception is not first subject to one of the Section 1- Exclusions.

*1. Water Damage Clause is not ambiguous*

The Plaintiffs (Doc. 38, pp. 3-4) argue that the term "surface water" in the Water Damage Exclusion (Doc. 17-2, Ex. 1, p. 16) is not defined, is ambiguous, and must be construed in a manner

most favorable to them.[4] (Doc. 38, p. 3-4).  While the Court must construe ambiguous terms in an insurance policy in a manner most favorable to the Plaintiffs, the term "surface water" as contained in the instant policy is not an ambiguous term under Pennsylvania law.  The Third Circuit has stated that:

> [t]he Superior Court of Pennsylvania has defined "surface waters" to include "accumulated waters which flowed under a defective door during a heavy rainstorm" and " 'waters on the surface of the ground, usually created by rain or snow, which are of a casual or vagrant character, following no definite course and having no substantial or permanent existence.' " *Richman v. Home Ins. Co. of N.Y.*, 172 Pa.Super. 383, 94 A.2d 164, 166 (1953) (*quoting Fenmode, Inc. v. Aetna Cas. & Sur. Co.*, 303 Mich. 188, 6 N.W.2d 479, 481 (1942)). We have held, in construing Pennsylvania law, that rainwater, once it hit the ground, "ceased to be rain and, properly characterized, was by then surface water." *Al Berman, Inc. v. Aetna Cas. & Sur. Co.*, 216 F.2d 626, 628 (3d Cir.1954).

*T.H.E. Ins. Co. v. Charles Boyer Childrens Trust*, 269 Fed.Appx. 220, 222-23 (3d Cir. 2008).

The Court agrees with Defendant's reliance on the *T.H.E.* case with respect to its argument that the surface water exclusion applies in our case.   In *T.H.E.*, the policy excluded coverage for damages caused by surface water.  The *T.H.E.* District Court stated:

> surface waters are "commonly understood to be waters on the surface of the ground, usually created by rain or snow, which are of a casual or vagrant character, following no definite course and having no substantial or permanent existence." *Richman v. Home Ins. Co. of N.Y.,*

---

[4]The Court notes that the case cited by the Plaintiffs, *Madison Const. v. Harleysville Mutual Ins. Co.*, 557 Pa 595, 606, 673 A.2d 100, 106 (1999), in an attempt to show that the term "surface water" is ambiguous, did not refer to surface water at all, and is not on point with our case.   *Madison Const*. only referred to the term "pollutant" as ambiguous. *Id*.  The Court notes further that, based on the *T.H.E.* case cited above, the term "surface water" in the present policy has been clearly defined under Pennsylvania law.

> 172 Pa.Super. 383, 94 A.2d 164, 166 (1953) (citation omitted). This
> definition is consistent with that applied by courts in other jurisdictions
> addressing the question of whether a loss has been caused by "surface water."
> *See, e.g., O'Neill,* 1995 WL 214409, at *3 ("Surface water is water which has
> 'diffused over the surface of the ground,' and is derived from falling rain or melting
> snow.' "); *Thorell v. Union Ins. Co.,* 242 Neb. 57, 492 N.W.2d 879,
> 883 (1992) (same); *Heller v. Fire Ins. Exch.,* 800 P.2d 1006, 1008-09
> (Colo.1990) (same); *State Farm Fire & Casualty Co. v. Paulson,* 756 P.2d 764,
> 768-72 (Wyo.1988) (collecting cases and concluding that "surface water"
> is not an ambiguous term, but plainly means "water on the surface, other
> than in streams, lakes and ponds."); *Valley Forge Ins. Co. v. Hicks
> Thomas & Lilienstern, L.L.P.,* 174 S.W.3d 254, 258 (Tex. Ct. of App. 1st Div.2004)
> (" 'surface water is generally defined as that which is derived from
> falling rain ... and is diffused over the surface of the ground.... Such waters
> are not divested of their character as surface waters by reason of their
> flowing from the land on which they first make their appearance onto
> lower land in obedience of the law of gravity.' ").

455 F.Supp.2d 284, 296 (M.D. Pa.).  *See also T.H.E.*, Third Circuit Opinion, 269 Fed. Appx. 222-223("We have held, in construing Pennsylvania law, that rainwater, once it hit the ground, 'ceased to be rain and, properly characterized, was by then surface water.'")(citation omitted).  The Third Circuit further stated, unlike the "convoluted insurance-policy exclusions in *Spece,* the term 'surface water' has clear definition under Pennsylvania and Third Circuit law construing Pennsylvania law." *Id.* at 223.

The *T.H.E.* Third Circuit Court also stated, "Courts have consistently held that rainfall that collects outside a building and subsequently flows into that building is 'surface water' for purposes of the surface water exclusion."  *Id.*

In the instant case, the Court finds that Defendant correctly attributes the nature and origin of the surface water as being caused by the heavy rainfall which began the weekend prior to June 28, 2006, and that this surface water then caused the damages to Plaintiffs' trailer and personal

property.  Even if it did not, as discussed below, the Concurrent Cause Exclusion still precludes coverage in our case.  Also, as discussed below, the Court finds that the exception to the Pollutant Exclusion does not apply in our case.

The Court also finds no merit to Plaintiffs' argument that there is an ambiguity in the insurance contract since it did not define flood water.  The *T.H.E.* District Court stated, "flood waters 'are those waters above the highest line of the ordinary flow of a stream, and generally speaking they have overflowed a river, stream, or natural water course and have formed a continuous body with the water flowing in the ordinary channel.'" *O'Neill v. State Farm Ins. Co.,* Civ.A. No. 94-3428, 1995 WL 214409, at * 2 (E.D. Pa. Apr. 7, 1995).  *Id.* at 296.  The Court finds that based on the definition of flood waters as stated by the *T.H.E.* Courts, a flood occurred in our case when PP&L released water from Lake Wallenpaupak into the Lackawaxen River due to the heavy rainfall.  As the undisputed ¶ 10. of Defendant's SMF states:

> 10.  The Plaintiffs' house is adjacent to the levee of the Lackawaxen River and upriver from the Paupack Creek, which PPL uses to release water from Lake Wallenpaupak into the Lackawaxen River. (Mrs. White, N.T., P. 9, lines 24-25; P. 28, lines 4-10; P. 9, lines 21-22; P. 9, line 22 to P. 10, line 8.)

(Doc. 17, p. 5, ¶ 10.).  In fact, the Plaintiffs' trailer was only a room's width away from the dike of the Lackawaxen River. (*Id.*, p. 7, ¶. 20).

The Court agrees with Defendant that the water which damaged Plaintiffs' trailer and personal property had a waterway as its origin since PP&L opened its floodgates and released water from Lake Wallenpaupak into the Lackawaxen River, which caused flooding to occur along the dike where Plaintiffs' trailer was located.  PP&L opened its dam floodgates at Lake Wallenpaupak too

late and too fast, and this caused the river to backflow. (Doc. 17, ¶'s 27. - 28.).  The PP&L overflow of water from its floodgates spread all over. (*Id.*, ¶ 29.).  PP&L opened the floodgates of Lake Wallenpaupak because the Lake was too high, and all of the water depicted in the photos shown to Mrs. White in her deposition was from rainwater and from PP&L opening the floodgates.  (*Id.*, ¶'s 36. - 37.).  Thus, the Court finds that the flood exclusion of the policy applies and precludes Plaintiffs' claim for damages.  The Court does not find that the evidence supports Plaintiffs' theory that when the water was released by PP&L, the water hydrostatically came from under the ground and seeped up through the ground.  The Court particularly relies on the photos which portray voluminous amounts of water on the surface of the ground. (Doc. 17, Exs. 5 and 6).  The Court does not accept Plaintiffs' conclusion that no flood occurred, since this argument is belied by the undisputed evidence in the record, specifically, the testimony upon which Defendant relies (*See* Doc. 17, ¶'s 11. - 19.) and Defendant's photos.  (Doc. 17, Exs. 5 and 6).  Based on the undisputed evidence, no reasonable minds could differ from the conclusion that a flood occurred from the heavy rainfall and fro the release of the floodgates by PP&L due to the rain during the relevant time of this case.

Based on the precedence of the Third Circuit, by which this Court is bound (*See* Doc. 47),[5] the Court determines that "surface water" and "flood" in the instant policy are terms with specific definitions and are not ambiguous.  The Court will use the stated definitions from case law to determine if the Water Damage Exclusion is applicable in this case.

_____

[5]As Defendant recently advised the Court, since Judge Vanaskie's decision in *T.H.E.* was affirmed by the Third Circuit, it is binding precedent on this Court. (Doc. 47).

In *T.H.E. Ins. Co. v. Charles Boyer Children's Trust*, 455 F.Supp.2d 284, 296 (M.D. Pa. 2006), affirmed, 269 Fed.Appx. 220 (3d Cir. 2008), the insurance policy contained, as does our policy, an exclusion for damage caused by flood, surface water, and overflow of any body of water.  The issue in our case is whether Plaintiffs' damages were caused by a type of water damage which was specified in the policy's Exclusion section, namely surface water and flood.

As Defendant argued on November 10, 2008, the evidence shows that in June, 2006, excess rain water caused a flood which required PP&L to release water from Lake Wallenpaupak into the Lackawaxen River, and that these events caused Plaintiffs' damages to their home and personal property.  Heavy rain caused PP&L to release the floodgates in June 2006 (as it did in September 2005), and this was the initial cause of Plaintiffs' damages, *i.e.* water and flood.  The Court disagrees with Plaintiffs that no flood occurred and that even if it did, the jury must decide if a flood occurred. The Court finds the evidence, particularly the photos submitted by Defendant, as well as Mrs. White's testimony, clearly show that a flood did in fact occur.  It is clear that the events which occurred in 2006, including the extensive rainfall which caused PP&L to release the floodgates[6] amounted to a flood for purposes of the Water Damage Exclusion in Plaintiffs' policy.

### 2. Lead in/Concurrent Cause Clause

The broad Lead in/Concurrent Cause Clause used by the Defendant in the present policy is similar to the Lead in/Concurrent Cause Clause that was recognized as a coherent and valid clause by this Court in the *T.H.E.* case.  This Court in *T.H.E.* previously recognized as valid a Lead

---

[6]There is no dispute that PP&L released water from the Lake Wallenpaupak floodgates during the relevant time of this case.

in/Concurrent Cause Clause which provided, "[w]e will not pay for loss or damage caused directly or indirectly by any of the following [enumerated exclusions]. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." *T.H.E. Ins. Co.,* 455 F.Supp.2d at 291.

The Plaintiffs cited to a Pennsylvania Superior Court case in their Supplemental Brief (Doc. 38, p. 5), and at the oral argument that stated, "[w]e conclude that the relevant language means that if an exception, in its entirety, applies then the loss is excluded, even if other events contributed to the loss." *Spece v. Erie Ins. Group*, 850 A.2d 679, 684 (Pa.Super. 2004).  The Superior Court in *Spece* found that there were ambiguous policy terms and that the cause of the damage was uncertain.  In *Spece*, the damage to the insured house was from a sump pump not running, which led to water damage to the house which was excluded from coverage, but the cause of the damage, a lightning strike that caused a power outage that rendered the sump pump inoperable, was not excluded. *Id.*  Since the policy in *Spece* was ambiguous and did not state that the water damage exclusion was the dominant clause, it was ambiguous regarding whether the damage was caused by the lightning strike or the sump pump not working. *Id.*  Since the policy language in *Spece* was ambiguous, the Pennsylvania Superior Court concluded that the ambiguity should be construed against the insurer and for the insured.  *Id.*

As the *T.H.E.* District Court concluded:

> Unlike the policy in *Spece*, which was found to be ambiguous with respect
> to exclusions concerning damage caused by power interruption and
> sump pump failure, there is nothing ambiguous with respect to TIC's exclusion
> for damage caused by surface water.  Furthermore, the fact that there
> is a jury issue as to what caused the earth movement, which in turn
> caused the water to back up and ultimately knock down the east

> door to the bowling alley, does not defeat application of the exclusion. The Policy bars recovery from an excluded cause, *i.e.*, surface water, whether the excluded factor caused the loss directly or indirectly, and regardless of "any other cause or event that contribute[d] concurrently or in any sequence to the loss." (Policy, Dkt. Entry 22, Ex. A at 29.). Thus, even if a covered landslide caused the disruption of normal drainage such that the hydrostatic pressure of accumulated surface water broke down the bowling alley door, coverage is nonetheless precluded.

455 F.Supp.2d at 298.

Unlike in *Spece*, the cause of the damage in our case is not ambiguous. The undisputed evidence in the record, including the photographs and the testimony, show, beyond doubt, that the extensive rain caused flooding, which in turn caused a backup of sewage from the sewer system when the sewer pumping station's pumps were turned off. Further, based on the Lead in Clause preceding the Water Damage Exclusion provision in our policy, the cause of the damages in our case is not subject to the same type of ambiguity in policy terms as in *Spece*. Since the cause of the damages is certain in our case and the policy terms are not ambiguous, the *Spece* case is distinguishable from the facts of our case, as it was from the facts of the *T.H.E.* case. The Court will determine below whether the Water Damage Exclusion is applicable and if it bars recovery by the Plaintiffs.

The Lead in/Concurrent Cause Clause in the Plaintiffs' policy stated, "[w]e do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss." (Doc. 17-2, Ex. 1, p. 15). This clause is almost identical to the one that was upheld by the Court in the *T.H.E. Ins. Co.* case. The Lead in/Concurrent Cause Clause in our case indicates that the exclusions which follow

16

it are the dominant exclusions in the policy, and that if the type of damage described in the exclusions occurs, then the damage will not be covered, regardless of the cause of the damage. Thus, the Third Circuit Court in *T.H.E.* has recognized that such clauses can and do exclude coverage when the cause of the damage is described by an exclusion in the policy.  The Court in the present case has already determined, based on the undisputed facts discussed above, that the cause of the damages was excluded from coverage by the policy.

Even if flooding did not occur, and, as discussed, the Court finds that it did, as Defendant points out, the Concurrent Cause Clause of the policy would exclude surface water from coverage. The evidence also shows that rain water caused the surface water to flood and that this, in turn, caused Plaintiffs' damages.  The concurrence of rain with something else, *i.e.* the release by PP&L of the floodgates, occurred in our case, and this still would exclude from coverage our Plaintiffs' damages claim under the policy, similar to the *T.H.E.* case.

Thus, as Defendant contends, simply put, if no rain occurred, no release of the floodgates by PP&L would have occurred, and no damages to Plaintiffs' house and personal property would have resulted.[7]

Therefore, as Defendant points out, even if flooding did not occur, as Plaintiffs contend, the Concurrent Cause Clause of the policy would exclude surface water damage from coverage.  As discussed, the Court agrees with Defendant that the evidence shows rain water caused the surface water to flood, and this caused Plaintiffs' damages.  As in the *T.H.E.* case, even if the Court found

---

[7]During oral argument, the Court understood Plaintiffs' counsel to state that a separate action is pending as against PP&L with respect to its release of the floodgates during the relevant time of our case.

17

that there was no flooding in our case, the Court would find that the surface water exclusion of the policy applies since the rain caused the surface water to rise, and this caused the damages to Plaintiffs' house and personal property.   The Court finds that the water from the flood and the surface water tainted with sewer water seeped into Plaintiffs' trailer and caused their damages. Thus, Plaintiffs were properly denied coverage with respect to their damages claim by Defendant, since there was no coverage for water damage caused by flooding and surface water.

The Court disagrees with Plaintiffs that the evidence shows the water came from underground and was not surface water.   The Court does not find the evidence supports this contention.   Nor does the Court find there to be any material facts in dispute with respect to the cause of Plaintiffs' damages.   Thus, the Court does not agree with Plaintiffs (as asserted at oral argument) that a jury must decide if surface water caused their damages.

### 3. Exclusions Written in the Disjunctive in the Policy

The Plaintiffs argue that the policy should cover the damages sustained to their house because of the exception to the Pollutant Exclusion which provided, "**Exception To 2.e.** Unless the loss it otherwise excluded, we cover loss to property covered under Coverage A, B or C resulting from accidental discharge or overflow of water or steam within a:  **(l)** Storm drain, or water, steam, or sewer pipe, off the 'residence premises'." (Doc. 17-2, Ex. 1, p. 30).  The Plaintiffs argue that the issue of whether this Pollutant Exception applies in our case is a matter for the jury to decide.

Exclusions are meant to be read separate from each other, and exceptions to the exclusions would only apply if they are not already barred by another exclusion.   Under Pennsylvania law,

exclusions are read as follows:

> [t]he exclusions should be read seriatim, not cumulatively. If any one exclusion applies there should be no coverage, regardless of inferences that might be argued on the basis of exceptions or qualifications contained in other exclusions. There is no instance in which an exclusion can properly be regarded as inconsistent with another exclusion, since they bear no relationship with one another.

*John J. Curry and Son v. Harleysville Mut. Ins. Co.,* 11 Pa. D.& C. 4th 521, 527, 1991 WL 378176, *4 (C.P. Carbon County, May 21, 1991).

Because Pennsylvania case law directs the reading of exclusions in the disjunctive, this Court reads the Water Damage Exclusion and the Pollutant Exclusion contained in the present policy, with its accompanying exception, as separate, coherent and viable exclusions. If any one exclusion is applicable, then recovery will be barred, even if an exception to the other exclusion would have allowed recovery.  As discussed, the Court finds that the Water Damage Exclusion applies in this case and bars recovery.

The Plaintiffs' policy also has a second set of exclusions for pollution damages.  Plaintiffs attempt to rely on the Pollutant Exclusion.  Plaintiffs argue that the rain water combined with sewage, and that this entitles them to coverage under the Pollutant Exclusion in the policy.  Even if Plaintiffs could prevail on the Pollutant Exclusion of the policy, as Defendant points out and as discussed above, the Water Damage Exclusion still applies in our case based on the undisputed evidence, and as Defendants state, exclusions are read one at a time in Pennsylvania.

The first set of exclusions in the policy, *i.e.* the Water Damage Exclusion, stated that coverage will exist unless it is otherwise excluded.  Further, as Defendant argues, if excess rain water is found to have caused a flood that breached the sewage system (*See* Doc. 17, ¶'s 34. - 35.),

as the Court finds occurred in our case, then even if the rain water combines with sewage, the damage caused is still excluded under the policy.

### B. Denial of Coverage

#### 1. Summary of the Facts/Evidence

The Court must now determine if Defendant properly denied coverage for Plaintiffs' claim, that is, if the events on June 28, 2006, that caused the damages to Plaintiffs' house and personal property are covered under their policy or if the damages are excluded.  If the damages were caused by surface water that carried up the sewage from the pumping station, then recovery will be barred because of the Water Damage Exclusion.  If the damage was caused by "accidental discharge or overflow of water or steam within a:  **(I)** Storm drain, or water, steam, or sewer pipe, off the 'residence premises'" (Doc. 17-2, Ex. 1, p. 30), then recovery will be allowed through the exception to the Pollutant Exclusion.

As previously noted, the Plaintiffs failed to respond to the Defendants' SMF (Doc. 17) and, therefore, are deemed as admitting all of the facts that were stated in the Defendant's SMF which were supported by citations to the record.  According to the testimony of Plaintiff Mary White, there was rain, starting on the previous weekend, that continued every day of the week leading up to the June 28, 2006 damages. (Doc. 17-6, Ex. 5, p. 34).  Further, in the deposition of this Plaintiff, she admitted that they moved their cars "in case they get more rain." *(Id.* at 37).  Plaintiff Mary White also testified that the sewage smell occurred around the same time as the high water mark, which was approximately the middle of the afternoon on June 28, 2006, after the sewer pumps inside the sewage pumping station were turned off. (Doc. 17-8, Ex. 5, pp. 102, 105-107

and Doc. 17, ¶'s 11. - 35.).

In addition, there is evidence showing that there was excessive rain which caused the Lackawaxen River to rise to a level where the floodgates on the storm drainage that goes to the river were closed.  (Doc. 17-16, Ex. 6, p. 8).

Further, Fire Chief Krause testified that when the flaps (floodgates) close and the water cannot escape to the river, all of the water tends to run to the area around the Plaintiffs' house because it was one of the lowest spots in town. *(Id.* at 9).  In his deposition, Krause also states:

Q: Let me see if there's – and if the water – if the pumps had been – if the sewage pumps had been able to keep up, then you wouldn't have – you wouldn't have had your pumps picking up the sewage, then, more likely than not?

A: Probably not, because I think the station would have been inundated one way or the other, and the sewage and the storm water would have mixed no matter what.

Q: Because of the amount of rain?

A: Rain, yeah.

*(Id.* at 29).

The testimony of Chief Krause continued as follows:

Q: That is the water running on the ground that couldn't get to the river that was then laying on the ground [causing the pumps to be overcome with water]?

A: That and the water that – storm water that backed up at that point in the area.

Q: Ok. And that's because the flaps close, and so instead of the storm and rainwater getting to the river, it was then laying on the ground at the low point of Church and Wellwood [near the Plaintiffs' house]?

A: Yes.

Q: So that it was the fact that the river couldn't take any more of the rain and – rain runoff that then overcame the pumps?

A: Yes.

*(Id*. at 30).

The testimony of Chief Krause also described the sewage pumping station as a twelve (12) foot deep holding tank for town sewage, with submersible grinding pumps that move the sewage across the river to a processing plant down the river.  *(Id*. at 26-28).  The top of the sewage pump holding station was near the ground's surface. *(Id.)*  In addition, testimony was offered from the Plaintiffs' expert, Mr. Nemac, who is a Building Code Enforcement Officer, that the Plaintiffs' house could not be salvaged except for the roof, "just for the water damage." (Doc. 17-5, Ex. 4, p. 14).

The Court determines that the pictures included in Doc. 17 clearly show water accumulated around the Plaintiffs' house (Doc. 17, Ex. 5-1- 5-7), and these pictures, along with the testimony and evidence stated in Defendant's SMF, indicate that the rainfall caused a great amount of surface water to accumulate around the Plaintiffs' house and around the sewage pump adjacent to their house.  The water inundated the sewage pump and lifted the sewage out of the pump, where it mixed with the flood water and spread into the Plaintiffs' house.  Since the large amount of rain during the preceding week and on the day in question caused the accumulation of water that is not usually present on the Plaintiffs' premises, it fits the description of "surface water" as defined by Pennsylvania Courts, namely, "'waters on the surface of the ground, usually created by rain or snow, which are of a casual or vagrant character, following no definite course and having no substantial or

permanent existence." *Richman v. Home Ins. Co. Of N.Y.*, 172 Pa.Super. 383, 94 A.2d 164, 166 (1953) (quoting *Fenmode, Inc. v. Aetna Cas. & Sur. Co.*, 303 Mich. 188, 6 N.W.2d 479, 481 (1942)).

The Court finds, based on the undisputed evidence, that reasonable minds can draw only one conclusion, namely, that the damage to Plaintiffs' trailer and personal property was caused by the large amounts of rainfall during the relevant time, which caused PP&L to release the floodgates of Lake Wallenpaupak, which caused flooding along the dike where Plaintiffs' trailer was located. The Plaintiffs' policy excluded from coverage damages caused by flooding. Even if flooding did not occur, and the evidence indicates that it did, the Concurrent Cause Clause of the policy excludes surface water damage from coverage. The large volume of rain caused surface water to seep through the ground, and this caused Plaintiffs' damages.

Further, even if the water combined with sewage, Plaintiffs still would not be entitled to coverage. As the *T.H.E.* District Court stated under similar facts as in our case (*sans* the applicability of the flood water exclusion of the policy):

> in this case, it must be concluded that the damage in question was caused, directly or indirectly, by surface water. That a covered risk may have contributed to the loss is irrelevant in light of the clear language of the lead-in clause. *See Valley Forge Ins. Co.*, 174 S.W. 3d at 258-59 (surface water exclusion coupled with lead-in clause similar to that at issue here compelled judgment in favor of insurer). Indeed, *Spece* recognized that recovery under an insurance policy would be foreclosed by the combination of a lead-in clause and an exclusion that applied "in its entirety - - even if other events contributed to the loss." 850 A.2d at 684. The surface water exclusion does apply in its entirety. Therefore, although there is a jury question concerning the applicability of the earth movement exclusion, the surface water

23

> exclusion and the lead-in clause unambiguously combine to exclude
> the loss at issue from coverage under the Policy.

455 F.Supp.2d at 298.

In our case, even if some water hydrostatically came from underground after the release of water by PP&L, as Plaintiffs argue, the Plaintiffs' policy still precludes coverage if an excluded cause exists, namely, flooding and surface water, notwithstanding the claim that underground water seeping up to the surface may have contributed to Plaintiffs' damages. The evidence shows that the damages to Plaintiffs' property were caused from water that hit the ground as rain, which caused Lake Wallenpaupak to become too high and P&L to open the floodgates and the Lackawaxen River to swell, and it became surface water again when the water flooded the dike area where Plaintiffs' trailer was located.  Thus, the Court finds no material facts in dispute with respect to the cause of Plaintiffs' damages, which was flooding and surface water, and that the damages resulted from excluded causes under the policy.

Based on the undisputed evidence, the Court determines that the flood and surface water led to the damages to the Plaintiffs' house, for which they seek coverage.  Thus, the Court finds that Defendant properly denied Plaintiffs' claim since it was excluded from coverage by the Water Damage Exclusion.

### 2. Denial of Coverage Letter.

The Plaintiffs argue that the July 7, 2006 letter from Mr. Reese, of the Ohio Casualty Group, denying coverage for their claim (1) does not include a specific reference to the flood/surface water exclusion, (2) only denies claims for damages in the basement and that

the Plaintiffs' house, being a trailer, had no basement, and (3) that the Defendant should be barred from changing or altering the denial for anything other than what was in the original denial of the Plaintiffs' claim. (Doc. 27, pp. 3-5). The Plaintiffs also averred in their Count II Bad Faith Claim of the Complaint that "the denial language [in the July 7, 2006 claim denial letter] quoted by the Defendant ignores the language of the policy provided to Plaintiffs and is without expert analysis, and is therefore false and fraudulent in its intent." (Doc. 2, p. 4, ¶ 16.).[8]

The Court agrees with Defendant (Doc. 46) and finds that Defendant's July 7, 2006 denial of coverage letter quoted the Water Damage Exclusion in its entirety as its reason for denying the Plaintiffs' claim. The Court determines that the Defendant did include a specific reference to the Water Damage Exclusion Clause by citing it *verbatim* from the policy itself in the letter that denied coverage. The Court recognizes that the case cited by the Plaintiffs (Doc. 38, p. 2) indicates that there is a "duty under Pennsylvania law to correctly cite the exact provision of the policy relied upon by [the insurer] when denying a claim." *Rutkowski v. Allstate Ins. Co.*, 2004 Pa. D. & C. 4th 10, (Lackawanna County 2004). The Court finds that, consistent with *Rutkowski,* our Defendant did correctly cite the exact provision of the policy used for denying the Plaintiffs' claim.

Since the Defendant cited the correct exclusion provision when denying the Plaintiffs' claim, the Plaintiffs' attempt to challenge the sufficiency of the denial letter is

---

[8]As Defendant correctly states in its November 13, 2008 letter to the Court, Plaintiffs' Complaint made no averment that the July 7, 2006 denial letter was limited to denying their claim for a non-existent basement. (Doc. 46).

without merit. (Doc. 27, pp. 4-5).  Even if the reason for denial was not correct, as the Plaintiffs erroneously state, the Plaintiffs' reliance on *Petrecca v. Allstate Insurance Co.*, 53 Pa. D & C 4th 1 (Philadelphia County, 2001), is misplaced for the proposition that an insurance company should be held to the denial letter it sends to the insured. (Doc. 27, pp. 4-5).  *Petrecca* is clearly distinguishable from our case, in that the denial letter in *Petrecca* was intentionally vague so as to avoid payment for the damages covered under the policy. The letter in our case has the policy reasons for the denial of Plaintiffs' claim clearly stated, since the applicable policy terms were quoted verbatim from the policy itself.

As Defendant contends (Doc. 46), the first and second paragraphs of the denial letter clearly advised Plaintiffs that their claim for damages to their "home and personal property" was denied from coverage.  The letter also quoted from the applicable policy clause which excluded coverage.   Plaintiff Mrs. White clearly knew what the letter meant, *i.e.*, the flooding caused by heavy rain precluded coverage under their policy. (*See* Doc. 2, Ex. B).

The Court agrees with the Defendant that, based on the second paragraph of the July 7, 2006 denial letter, coverage was clearly denied for loss to "your home and personal property as a result of flooding conditions which followed heavy rains." (Doc. 27-2, p. 1, and Defendant's Ex. 5-9-B).  The Court finds that the undisputed evidence shows Defendant clearly stated the reason for the denial of all coverage for damages to the Plaintiffs' home and personal property, despite the error in the last sentence of the letter referencing Plaintiffs' basement.

As discussed, the Court agrees with Defendant as argued on November 10, 2008, and finds that the broad Lead in/Concurrent Cause Clause is valid, that the exclusions were written disjunctively, that the Water Damage Exclusion controlled over the exception, and that the policy terms were well-defined and not ambiguous.  The Court also finds that the facts of the case fit into the Water Damage Exclusion of Plaintiffs' policy and that Plaintiffs' claim for damages was properly denied by Defendant.  Since the damages were properly excluded from coverage, the Court finds that there was no breach of contract by the Defendant.

Therefore, the Court will grant Defendant's Summary Judgment Motion with respect to Count I of the Complaint.

*C. Bad Faith Claim*

As discussed, the Court has determined that the Plaintiffs' claim for damages was properly excluded from coverage under their policy's Water Damage Exclusion.  The Court now turns to the Plaintiffs' bad faith claim, Count II of the Complaint.  The claim for bad faith depends on whether the Plaintiffs' claim  was covered under their insurance policy. Since there was no duty by Defendant to cover the damages to the Plaintiffs' house and personal property, there can be no bad faith claim. *USX Corp. v. Liberty Mut. Ins. Co.*, 444 F.3d 192, 202 (3rd Cir. 2006), *cert denied*, 127 S.Ct. 296 (2006) *(citing Frog Switch &Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 751, n.9 (3rd Cir. 1999) (affirming district court which held that, under Pennsylvania law, "bad faith claims cannot survive a determination that there was no duty to defend, because the court's determination that there was no

potential for coverage means that the insurer had good cause to refuse to defend")).

In this case, the Defendant properly denied coverage of the Plaintiffs' claim under the Water Damage Exclusion of the Plaintiffs' homeowners insurance policy.  Since the Plaintiffs' claim was properly denied by Defendant, there can be no showing under a clear and convincing standard that there was bad faith.  Because the Court finds that there can be no claim for bad faith, absent a duty by Defendant to provide coverage for the damages, the Court will grant summary judgment for the Defendant on the Plaintiffs' bad faith claim, Count II of the Complaint.

As indicated at oral argument, the Court will not address the Defendant's Motion *in Limine* to exclude the Plaintiffs' expert witness since Defendant's Summary Motion has been found to be meritorious with respect to both of Plaintiffs' claims.  Thus, Defendant's Motion *in Limine* will be denied as moot.

Accordingly, the Defendant's Motion for Summary Judgment on the breach of contract claim and the bad faith claim will be granted.  The Defendant's Motion *in Limine* will be denied as moot.  An appropriate Order and Judgment will follow.


**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: December 5, 2008**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN WHITE and MARY WHITE, :  CIVIL ACTION NO. 4:06-CV-2453
husband and wife,      :
            :
    Plaintiffs    :
            :
    v.       :  Magistrate Judge Blewitt
            :
WEST AMERICAN INSURANCE CO., :
            :
    Defendant   :

**ORDER AND JUDGMENT**

  **AND NOW,** this 5th day of **December, 2008**, based on the foregoing Memorandum,

**IT IS HEREBY ORDERED THAT:**

  1. The Defendant's Motion for Summary Judgment **(Doc. 17)** is **GRANTED**.

  2. The Defendant's Motion *in Limine* **(Doc. 19)** is **DENIED as moot.**

  3. Judgment is entered in favor of Defendant West American Insurance Co. and

against Plaintiffs John White and Mary White.

        **s/ Thomas M. Blewitt**
        **THOMAS M. BLEWITT**
        **United States Magistrate Judge**

**December 5, 2008**